Mr. Sanfilippo. May it please the Court. Good morning, Your Honors. Steve Sanfilippo for Appellant Spear Marketing. This case arises out of a lawsuit that originally was filed by Spear in Texas State Court alleging claims arising out of Appellee's BancorpSouth and Argo's alleged use of Spear's trade secrets related to their VaultWorks cash management system in the production and implementation of a competing product. Defendants removed the case to federal court based upon claims that all of Spear Marketing's claims were Spear Marketing amended their pleading to remove any allegation of copying that was in their Texas Theft Liability Act claim and to also drop their conversion claim and they moved to remand the case back to state court. The district court first decided that it had to determine the issue based upon the original state court pleading and not the amended federal court complaint and in doing so concluded that at least the Texas Theft Liability Act claim and the conversion claim were potentially preempted and therefore federal question jurisdiction existed and then the district court subsequently granted summary judgment finding that all of Spear's claims relied upon a finding that the defendants used Spear's confidential trade secret information and that there wasn't a genuine issue of material fact as to use. On appeal, Spear challenges both the remand order in this court's jurisdiction and the summary judgment order. First, with respect to the remand, Spear would respectfully submit that the district court erred in finding that the time of filing slash removal rule applied and that it was bound to apply the or decide the issue based upon the state court pleading. As the Supreme Court held in the Groupo Dataflux case in 2004, the time of filing rule measures all challenges to subject matter jurisdiction, quote unquote, premised upon diversity of citizenship against the facts that existed at the time of filing. Counsel, the court certainly said that. There is no contrary statement from the Supreme Court, is there, that this does not apply to federal question cases or to anything else? There is no contrary support, that's correct, Your Honor, but the First Circuit in the Connectu LLC v. Zuckerberg case held, and I quote, that Groupo Dataflux explicitly restricted the time of filing rule to diversity cases and nothing in the opinion intimates that the court meant to extend that rule wholesale beyond the bounds of the diversity cases. And there's no Fifth Circuit authority? There's no Fifth Circuit authority, Your Honor, but I will say this. The Fifth Circuit held in the Bolins case, the policy behind applying the time of filing rule is to prevent manipulation of federal court jurisdiction. It has done so, and let me quote, the purpose behind the filing rule is this, when a plaintiff chooses a state forum yet also elects to pursue state law claims, he runs the risk of removal. And in all the cases that this court has applied the time of filing rule in a federal question case, they've all been cases where either the plaintiff named a defendant that gave rise to removal, i.e., a defunct bank is most likely an FSLIC or FDIC, came in and removed, or it alleged federal claims and then later wanted to drop those federal claims. In other words, in those cases, those courts, those plaintiffs presented themselves to removal. Here, on the other hand, there's no question on the face of Spears' complaint, there was no federal question raised. The district court found that. Nevertheless, it found that the allegations could be read to give, to make a copyright claim, and therefore, it alleged jurisdiction based upon that. The policy behind the first to file rule just isn't applicable here. You have a lot of ground to cover. Maybe we can consider that point made. Thank you, Your Honor. With respect to the actual, even if you based it on the original petition, the district court still was required to render all doubts as to the propriety of removal against removal and in favor of remand. If the court would have done that, if you would have looked at Spears' complaint, it would have had to have come to the conclusion that even the claims as alleged in the original petition were not removable, were not preempted under the federal, under the Copyright Act. First, with respect to the TTLA claim, a copyright claim requires ownership of a copyright and copy. A Texas Theft Liability Act claim requires possessory right to property, misappropriation of that property, and that the plaintiff suffer damages. In, I guess it's the binary case, the court found, and this is the number one case in the Northern District of Texas, found that this element of misappropriation is an extra element that applies in a TTLA claim that does not apply in a copyright claim, and therefore a copyright claim or a TTLA claim is not preempted. And even more broadly, Spears' TTLA violation claim was based upon the misappropriation of a trade secret. Under Texas Penal Code Section 31.05, one of the elements you have to show is in fact the existence of a trade secret. Well, this extra element part for the second step of the analysis certainly exists, but the idea of idea submission claim being preempted, one way that's been expressed is that the idea here of the trade secret is within the scope of copyright, which means it's a work of authorship containing some particular idea or other creation. And so it does seem to me that your extra element that takes it out of copyright can't just be that it's a trade secret or it's a book or it's something else. The issue is the creation aspect of it and whether it's basically in writing or in some form subject to the copyright laws. And certainly with respect to that first element of subject matter, a trade secret can fall within that first element. But with the second element, a trade secret is very different than a book. It has to have, it has to be something that isn't generally known to the public and it is a separate element that has to be met. And in the Versada case, the Western District of Texas found that trade secrets are not the same thing. They don't protect the same interests. And therefore, while a copyright claim may be based upon a trade secret claim, it doesn't necessarily always have to be. And in fact, you have to prove that extra element in a trade secret case, i.e. a trade secret, that you don't have to prove in a copyright case. And for that reason, that element is an extra element. But in the Globe Ranger case, which Judge Borrell relied on a good bit in the initial opinion that she wrote, there, there was no suggestion that the software involved had been copyrighted. There, it seems to me that it was in essence a proprietary information, a trade secret on the part of the party who was claiming the violation. And ultimately, some of those claims were found to be subject to preemption. So isn't this very similar to Globe Ranger? Well, I will tell you, Your Honor, you beat me to the point. Globe Ranger, as this Court stated, and I believe, Your Honor, it was you who succinctly stated that the conversion claim, quote, unquote, was the defendant's best argument as to preemption. And the Court found that by finding that although the Court, although the plaintiff argued that his claim was based upon the, the conversion of tangible property, the only allegations in the complaint were that it was conversion of intangible property. That's not the case here. Here, our pleading unquestionably alleged conversion of tangible property. In fact, the District Court found that while, while it primarily dealt with tangible property, it, quote, unquote, could be read to allege a conversion claim with respect to intangible property. And I would submit to the Court that there's two issues with that. The first is, under a very strict interpretation of the pleadings and in giving all the benefit of the doubt to remand as the Court was required to do, it shouldn't have read that complaint to say, well, gee, it might have alleged copying of an intangible, intangible property and therefore we have jurisdiction. It should have read it the other way. It should have said, you know, maybe in a stretch it alleges intangible, but it, it alleges conversion of tangible property. That's not preempted in the conversion claim. Can't support jurisdiction there. The other thing that I would submit to the Court is under Texas law, as this Court found in the, in the Carson v. Dynegy case, a conversion claim under Texas law cannot be based upon intangible property. It can only be based upon tangible property. If that's the case, then the claim as alleged by Speer to interpret it as, as being a conversion of intangible property takes it entirely out of Texas as conversion law. Therefore, the Court would have effectively have based jurisdiction upon a claim that, not, not a claim that just isn't supported by the facts, a claim that is not recognized under Texas law. And in the Carson v., Carson v. Dynegy case, this Court, when it, when it reviewed whether or not a conversion claim was preempted by the Copyright Act, didn't even consider the allegations that went to the intangible property element because it said that's not even a cognizable claim under Texas law. And instead it focused only upon the allegations as to the physical property that was converted and found that that claim is not, is not preempted under Texas, under copyright law. So assume the unhappy hypothetical that we don't agree with you on preemption and that we do determine complete preemption applies here. What is the effect of that? There's case law, Globe Ranger being one of them, that suggests if complete preemption applies to claims that have been brought as state law claims, dismissal is proper. There's other authority that those get converted into equivalent copyright claims. Judge Borel pretermitted that by just treating them as state law claims and never addressing, in a final opinion, complete preemption. What, what's your take on what happens if complete preemption applies? What happens to the complaint that's, that's been brought with all these state law claims in it? I think practically speaking now it has no effect on the case that's sitting there, setting aside, of course, the summary judgment order that we'll discuss next. But the two claims found to be preempted were Texas Theft Liability Act claim, which we have since removed all allegations of copying, and the conversion claim, which was dropped in the amended claim and is no longer involved in the case. So as a practical effect in this case, I don't think it has an effect on it. I don't think there's an argument that the, the trade secret misappropriation claim was preempted, and certainly the district court didn't find that. And there are also claims of breach of a confidential, confidential duty, and there's cases out there that say those types of cases, when your claims are based upon a party having breached a confidence, that is an extra element not involved in a copyright case because you've got the element of the breach of the duty of confidentiality. So practically speaking, as the effect of that on this case, it would mean this court has jurisdiction and that the district court had jurisdiction. But as far as the pleadings, we have to move on to the summary judgment because the claims aren't dismissible just because they're preempted. We get to the jurisdiction. Well, that Globe Ranger actually says, I think, the contrary, though maybe errantly, and maybe as dicta. Globe Ranger says that as to the claims that are preempted, but mind you. I thought that's what you were saying as well. There, she didn't make a finding that all of the claims were preempted and didn't make a finding that even the primary claim, which is a trade secret misappropriation claim, was preempted. She just found that there was enough in the pleadings to give rise to Federal jurisdiction and that's all she needed to find, and that's effectively how she treated it in the summary judgment order. And there's no finding, therefore, I think then, and certainly not in her final opinion, that the remainder of the claims were not preempted. She did not have to make that determination. She didn't decide it, but I think if this Court looks at the pleadings and the remainder of the case, and most importantly, the evidence, as this Court stated in the Globe Ranger case, to be clear, our conclusion is without prejudice to the record establishing that the claims are not based upon simply the copying and the violation of a Copyright Act claim. And, Counsel, specifically, what evidence do you contend establishes that Argo utilized your trade secrets to create its CIO software? There is a plethora of documents and e-mails and deposition testimony that from 2010 on, after they had access to SMI's trade secrets and learned about the functions of VaultWorks, they signed the license agreement with Bancorp South, and those two, for the next year and a half, engaged in a period of trying to implement CIO, in which So the evidence is that The evidence is that Bancorp South was sending VaultWorks reports and VaultWorks information, which is SMI's product, to Argo so they could use it to test CIO, to troubleshoot CIO, to add new features to CIO. In other words, they're using it effectively, they're trying to reverse engineer VaultWorks results The sending of the reports, anything else? The use of the reports, it's basically that, the evidence in the record, that's primarily what it centers on, is the use of, you know, their trade secrets include the algorithms, the reports, the input and output, all of that stuff were in the reports that were sent and utilized in the implementation of CIO. With my colleagues' indulgence, let me take you one step further with that. There was apparently an offer made to have an expert examine the programs, the competing programs here, an offer that was not pursued. Isn't it a problem in a case dealing with this kind of product, not to have some sort of expert say there actually is a portion of what BankCorp South is using, what Argo came up with, that mirrors, that duplicates what had been trade secret information in your client's software? Certainly I wish I had that evidence in the record, but I will say the definition of use under Texas law is extremely broad and encompasses things such as the utilization of somebody else's trade secret to test your product, implement your product, troubleshoot your product, and that, you know, like it or not, that is a viable claim under Texas law. Now, the jury could look at it and say, no, there's no damages here, there's no misappropriation, but respectfully, that was an issue that the jury should have been allowed to answer. Thank you. Thank you, Your Honor. Mr. Harper, you may be doing this. Why don't you identify what you would like us to hear from you and what other counsel is going to address? Thank you, Your Honor. David Harper. I represent Apelli Argo Data Resource Corporation. I'll present the first part of the argument on behalf of both appellees concerning jurisdiction and independent development, and Ms. Gray will present an argument on behalf of Apelli Bank Corp. South regarding direct and circumstantial evidence of use, and we ask for the summary judgment to be affirmed and for a remand on the fee determination. As a preliminary matter on jurisdiction, I won't take much time on this, but the time of filing rule is very well established in authority in this circuit. It's not well established on federal question, is it? Well, we've cited a number of cases in our briefing, but I would point the Court particularly to the Bank One case and to the Brown case, and the Brown case involves ERISA preemption, which is similar to our situation here. And as the Court knows, the purpose as set out in the Boland's opinion is to avoid wasteful jockeying between state and federal court, and that is just as applicable in federal question cases, especially in a preemption case like this one, where a plaintiff may try to hide or conceal true federal claims, just as SMI did here, and ultimately asked for the Court to solidify jurisdiction and try to add federal claims. It's been applied since 1988 when 1447C was adopted, so the right pleading to examine is the original petition. I take a new look. There is no Supreme Court case that has applied that, limited to the original petition, in a federal question case? I agree. I'm not aware of that, but we disagree, of course, with the appellant. Understood, but there is no — It was a diversity case before it, and the Supreme Court addressed that in context. Let me move to the heart of the preemption argument. This Court held in Globe Ranger that the Copyright Act completely preempts the substantive field, which means that preempted state law claims are treated as federal claims. A claim is preempted, as Judge Wiener explained in the Alcatel case, that the work at issue falls within the subject matter of copyright and the cause of action seeks to protect rights equivalent to any of the exclusive rights within the general scope of copyright. Obviously, we're in a different procedural posture than Globe Ranger because we're after a summary judgment order, and we only need to find one claim and even one part of one claim where there would be jurisdiction. We have a factual record, and it's undisputed that VaultWorks is completely software. Will you cite in your brief something that may challenge the accuracy of Globe Ranger in this particular respect, which is that the preemptive effect of copyright law was not by the protection of copyright, which has some exceptions to it? And I'm not asking you to challenge Globe Ranger. It might be awkward for you to do that here, but is that a fair assessment of your view on what is completely preemptive? It's not just claims that are protected by copyright, but any claim that would fall within the general scope and subject matter of copyright, which is broader than what is protected. Yes, especially at the pleading stage, Your Honor. You can't do an abstraction filtration analysis at the pleading stage. So we can't go into that kind of a detailed analysis. We may perhaps make a high-level attempt at that, but not a full analysis that you could make after the factual development of the case. The other circuits who've considered this issue, and as the Court points out in our brief, we cite these, the Second Circuit in the MBA case, the Seventh in the Proceedee case, the Sixth in the Wrench case, and Judge Lake from the Southern District of Texas in the Keene case, all focus on the subject matter, just does the work fall within the subject matter, which is what the Court, what 301A says to do, and it's what this Court has looked at in making that kind of analysis. Is that relevant here? I'm concerned about Judge Borrell not ruling on the basis, concerned not enough to say she was in error, but I would want you to address that she did not rule on the basis of complete preemption, set that aside, and let's look at the facts supporting the claims as stated. Is that, was that appropriate, and does what we're talking about on complete preemption suggest that all of these claims, in fact, would be completely preempted in your view? We do think that they're completely preempted, but there were some trade secrets, and this is at tab six of our record excerpts, the interrogatory answer of 49 trade secrets that they list. There are six of those that are, the first six, that relate to kind of business information, one of them actually being that Mr. Speer was going to retire, but some things of that nature, those particular trade secrets, we can't contend that those would be preempted, so I think the District Court, in analyzing this, saw that use was a way to eliminate all the claims, and analyzing the use element of a trade secret claim, that would eliminate all the claims and could rule in that way. I do think that complete preemption would otherwise dispose of the claims other than those six trade secrets. But is it really, I mean, it's not jurisdictional, perhaps, but I'm troubled by it. The case law says that the claim is completely preempted. It cannot be brought as a state law claim. It has to be brought as an equivalent federal claim, or not at all, and so can you, I mean, what would be the justification legally to resolve a claim that cannot be brought in federal court? Well, first of all, the court needed to do something to analyze it, and there were these issues where you could, doing an abstraction filtration type analysis, there could be an abstraction, and there could be trade secrets related to VaultWorks. They could argue, well, perhaps those don't fall within the scope of copyright. So it's a very difficult, it could be a very difficult analysis. I think the court is correct that the case should be dismissed as to those particular claims, but I agree that the case law is unclear about how to go forward in that particular situation, but those claims should be dismissed. Well, you said you agree they should be dismissed, and I don't keep beating a Glomgranger, but that's actually what it seems to say. But there is case law that indicates that perhaps these claims are converted to equivalent copyright claims, as opposed to dismissing. There's a circuit split on that. I don't see where your brief took a position on the proper approach, but had Judge Borrell gone down the road of deciding which ones of these are completely preempted, she would have been faced with that. In this case, in the pleading, the plaintiff may explicitly abandon any copyright infringement claim. So if the court were to go down that road, at least in this particular case, the plaintiff foreswore all of those type of claims and said, I am not trying to bring a copyright infringement claim. Unfortunately, their pleading, including their amended pleading, continued to assert copyright infringement claims, even though they were trying to say that they weren't. But once they say, I'm not asserting them, I think the only thing to do is to not convert them into a copyright claim, but to dismiss them. And you can correct me if I'm wrong, counsel, but these issues about what should have happened to the state law claims, they weren't raised on appeal by SMI work. You're right, Your Honor. We would contend that that issue would be waived. They did not raise that on appeal. Make sure, what issue do you think would be waived? I know if I had listened more closely to Judge Graves, I would know. They did not raise this issue of converting the claims into copyright infringement claims, if I understood Judge Graves correctly. Let me move to the equivalent rights prong of the test. SMI's claims also satisfied that and appellant's counsel noticed this, that get into what is the equivalent rights prong of the test, but that test is to always look at the particular facts of the case and the core factual allegations to see if it's qualitatively equivalent. Some courts, district courts, get confused, it appears in our judgment, that they get confused by the name of extra element test and get engaged in some kind of mechanical exercise, or they try to reexamine step one, as the court noted earlier in the argument, that they try to reexamine step number one about what type of work it is in step number two. Here clearly the qualitative aspects of the claims raised fall within this test, including the Theft Liability Act claim and the conversion claim. The Theft Liability Act claim was preempted because it alleged verbatim in the original petition that appellees copied and transmitted writings, and by implication, appellees copied the software. Even if the claim didn't use the words copied and writing, it still would have been preempted, since the copying of the VaultWorks software and written materials to make CIO is clearly what is being alleged. The claim therefore sought to protect rights equivalent to exclusive copyright rights of reproduction distribution and display, and courts in this circuit have found Theft Liability Act claims to be preempted, including the MI case from the Southern District of Texas and the Ledesma case from the Western District of Texas. The conversion claim was also properly preempted. That claim accused appellees of converting its property, including confidential information and trade secrets. So even if, even as appellant says, we were only seeking, we were only seeking a claim based upon physical property, that's not what the pleading said. And so it's a disingenuous claim to say they were only alleging conversion of physical property. It identified no physical property, and it's insisted all along the cases about trade secrets that were transmitted electronically. Because the claim alleged conversion of software and intellectual property, it sought to protect rights equivalent to copyright, and it's preempted under the law of the circuit. Numerous of the other claims alleged also were preempted, and we believe complete preemption is appropriate here, because all those claims were based on the same central allegation that appellees copied SMI software and written materials to make competing software CIO, as was the case in Daboob. The core of each of the state law claims, regardless of the specific elements, is the same, wrongful copying. And I would point the court to the Daboob and Alcatel opinions about the unfair competition claim. Every district court opinion that we're aware of in the circuit has found a similar unjust enrichment claim to be preempted, and then the other claims as well. You said in your brief, or whoever wrote it, that you believe Daboob stands for the proposition that state law claims must be replayed as copyright claims are dismissed. You cited a couple of pages in the opinion, and I certainly don't see that the court actually said that. Do you recall that part of your brief and why you would be relying on Daboob for that? No, I don't recall that particular statement. That's a minor point, and I think it may even have been a string site. So that's all right. That's all right. Move ahead. Let me, in supplemental jurisdiction, let me briefly just note that the court was well within its discretion, which this court has held as wide to exercise supplemental jurisdiction, and the court properly considered the principles of economy, convenience, fairness, and comedy, and concluded that it should retain jurisdiction. Let me move briefly to the summary judgment and Ms. Gray will talk further about it. But the district court properly granted summary judgment in favor of Appelese on the ground that Appelese did not use SMI's alleged trade secrets. The district court held, and Speer concedes at page 11 of its brief, that each of their claims was dependent upon a finding of trade secret use. At page 53 to 54 of our brief, we go through in detail the evidence of independent development, and those claims fail, first of all, because we'd established independent development, that CIO was developed, demonstrated, and marketed more than a year before we even heard of Mr. Speer. And in their reply brief at page 12, they admit that independent development was occurring. Based upon that uncontroverted evidence, Appelese affirmatively demonstrated that Argo did not use Speer's alleged trade secrets in any way to develop CIO or otherwise. And upon making that showing, it was incumbent on SMI then to come forward with evidence to the contrary that a reasonable jury could rely on to avoid summary judgment, and of course it did not. It never took one of the 49 so-called trade secrets and tried to tie that together with anything that was in CIO. As a matter of fact, we identified in our own expert report certain minor changes that were made since the date that we met Speer to the time of the final implementation at Bancorp South, and they even tried to do that, to try to compare one of the 49 trade secrets to any of those minor changes that were made to the product. Is it your position basically on trade secrets here that at best your client and the bank had access to the trade secrets, but there's no proof that they were used at all, and competing, if that's the right word, program that was developed? Absolutely, Your Honor. That at best there was access, and if you even examine the trade secrets, it's very hard to contend that they're trade secrets. In our brief, and obviously in the summary judgment record, and the district court didn't reach this, we went into extensive evidence about why these weren't even trade secrets, and there wasn't any protection of those, and they waived any protection of those. But exactly, at most we saw some things that we don't consider to be trade secrets, and never used them in any way. I see that my time's expired. Thank you. We ask for affirmance, and I'll yield my time to Ms. Gray. Thank you, Counsel. May it please the Court, Tonya Gray for Applee Bank, Corp South Bank. As Mr. Harper indicated, I will address argument on behalf of both Bank Corp South and Argo as to Spear Marketing's failure to produce any evidence, whether it be direct or circumstantial, that Applee's used Spear Marketing's trade secrets to create or modify Argo's CIO solution. With such a lack of evidence, the district court's entry of summary judgment in favor of Applee's was proper. Contrary to Spear Marketing's arguments, the district court did not improperly weigh the evidence. Rather, deferring to Spear Marketing as the non-movement, the district court simply found there was no evidence of trade secret use in the record. This is not surprising, given Spear Marketing, in fact, never had anyone review CIO, as the court has indicated already, and compare it to Spear Marketing's VaultWorks software. Spear Marketing, likewise, never identified one single aspect of CIO that it contended was derived from its trade secrets. As the district court correctly observed, Spear ignored CIO entirely, and instead elected to bury its head in the sand rather than attempt to show direct evidence of trade secret use. Spear Marketing takes issue with the district court's conclusion that it substantially conceded there was no direct evidence of use. But in response to Applee's summary judgment motion, Spear Marketing did not identify any direct evidence of use. The court can see this at Record of Appeal 6048. Instead, Spear argued to the lower court that a fact issue could be created based on circumstantial evidence because a jury could infer use. Let me ask about that. The opposing counsel in the briefing, anyway, has talked about access and similarity. Is there any similarity between the two programs, if I may use that, other than what their ultimate goal is? Was there any evidence that what each party came up with have similarities to them in a technical sense, other than they monitor and help control the same ultimate decision-making? No, Your Honor. They are both on-surface cash management software solutions, but very different in— That's the similarity. That's the similarity. That's it. Is that the only similarity, in your view, that was shown? Yes, Your Honor. Spear Marketing did nothing to actually compare the two softwares. Even though an offer was made six months before litigation was filed to allow an independent expert to do that comparison, even though throughout discovery, the CIO solution was provided to them, both in actual hard copies—I mean, a software on disk and through various screenshots and other documents that evidenced how it worked. I would like to address briefly one argument made by opposing counsel as to what was provided. And he was talking about algorithms and output and all of these things. And the record demonstrates, to the contrary, the only information that Bancorp South provided to Argo was its own data. The one finding that Judge Will made as to what is and is not a trade secret was Bancorp South's cash data. She affirmatively found that it was not one of Spear's trade secrets. The contract between Bancorp South and Spear Marketing recognized that that was property of Bancorp South. On page 15 of its reply, Appellant Spear Marketing even recognizes that what was transferred was data. And by not challenging Judge Boyle's conclusion that that is not a trade secret, Spear Marketing has waived any argument on appeal to the contrary. As to the access plus similarity, the evidence that Spear pointed to to the district court was all about access, as recognized by Judge Boyle. It was the fact that Mr. Spear, on his own election, contacted Argo and offered to provide them some information. And it was that, as a customer of Spear Marketing, Bancorp South had access to the user input screens, the input screens where they would input their own data, and then the reports that would be generated from that. But there is no demonstration of similarity. And if circumstantial evidence can be used to prove use of a trade secret, you have to have both elements of that. On the access point, Judge Boyle found there was a fact issue. But even then, Spear Marketing did nothing to show what trade secrets were supposedly accessed through this information. They just say that there must be some trade secrets in those screenshots, in those emails. So our argument is that they fail on even the access test. But they certainly fail on the similarity test, because they did nothing to actually compare the products and produce evidence to the district court or to this court that the two products are similar. Thank you. We're here. Are you in rebuttal? There's been a lot of focus on what Spear could have done. The focus really is on whether or not Spear produced evidence raising a genuine issue of material fact on the use element. That's it. The use element under Texas law is any exploitation of the trade secret that is likely to result in injury to the trade secret owner or enrichment to the defendant. It includes things such as relying on trade secrets to implement your product, to improve your product, to troubleshoot your product. There is evidence in the record that that is exactly what the defendants did with Spear's information. The only way around that, as the district court got around it, is to say all they really used was Bancorp South's data. And as you just heard about the VaultWorks contract, which is on page 6296 of the record, the VaultWorks contract makes clear that the data sent to Bancorp for analysis is the bank's data. There's no question about that. The information they send to Spear belongs to the bank. But it isn't this raw data that they were asking, that Argo was asking Bancorp South to send them so they could troubleshoot their new program. It was the analyzed, processed and reported results of the VaultWorks program that was applied by SMI. That is what was sent. That is what was used. And under Texas law, that is at least enough to raise a genuine issue of material fact as to use. And I would submit that this Court's comment in the Of course, I can't find it. This Court stated that whether or not this Court would have come to a different conclusion or whether or not the conclusion could seem inescapable to the district court judge isn't the issue. The only issue is whether there was evidence to submit that question to the jury and this was enough evidence. Maybe it wasn't enough to carry the day. Maybe we went to one at trial. But Spear had the right to have the jury make that decision and not the judge. With respect to the first to file cases that defendants rely on, every one of them predated the Grupo Dataflux case. Every one of them involved a scenario in which either the plaintiff had pled a defendant on the face of the pleading that gave rise to the dismissal or pled a claim. The ERISA case that he referenced was a case where he pled the denial. The claim was based on the denial of ERISA benefits. That on the face of the complaint raises an ERISA claim. That is not the issue here. More to the point, the policy behind the provision, as stated before, is not. It's to prevent manipulation. It isn't to prevent otherwise legitimate state court claims to say, oh well, you know, we could interpret this pleading to be a copyright preemption pleading so we're just going to expand federal jurisdiction. And this court made clear in the Enoch v. Lampasas County case, 641 F. 3rd 155, forum manipulation, which is the only issue that can even arguably favor retention of a federal question jurisdiction, at least in this case, the motion to federal claims, it's not particularly egregious to, in other words, sorry, let me restart over. When you amend your complaint after removal, and you remove a federal claim so that you remove any basis for federal jurisdiction, this Enoch court says that that is not a particularly egregious form of forum manipulation, if it's forum manipulation at all. The fact of the matter here is FEER intended to make, file state law claims. It thought it did when Appellees stated differently, they amended their complaint and cleaned up even any arguable basis for federal preemption, and the district court should have relied upon the amended complaint and found there was no preemption. And with that, Your Honors, unless there's any more questions, we would respectfully ask the court to reverse the judgment and remand the state court finding no jurisdiction, or at a minimum, reverse the summary judgment order and find there's a genuine issue of material fact as to use. All right, Counsel. Thank you, Your Honors. Thank each of you for helping us understand.